Good morning. May it please the Court. My name is Barry Rhodes. I represent the defendant appellant, Mr. Garcia. This Court sees deplorable crimes for sure, but I submit that this involving the murder of a 19-year-old mother and a 2-year-old child... It ranks right up there. Go ahead. It certainly does. What brings me here today is that the defendant is not irredeemable. He has shown extraordinary remorse manifested objectively by his plea of guilty, by his statements to the Court, by the psychological symptoms. May I suggest that the sentencing court took that into account? It did. It did indeed. Go ahead. But I don't think in a manner that showed sufficient deference to the extraordinary nature of this young man's remorse. Let me bring the Court . . . I'm sorry. The district court looked at this very carefully, you have to say, and he did take into account your client's remorse, but then looked at the case and the factors in their totality. This was an unspeakable crime of the worst sort, and he went through the various factors that need to be considered. At this stage of our review, what is it that we should do given what the district court did? Judge Bianco . . . Our review is limited in this case. Judge Bianco is a fine jurist, and his record is superb in this case, and I understand what a difficult obstacle it presents for me. But nonetheless, case law recognizes that there are situations, concededly quite rare, where the judgment of the district court in evaluating all the 3355 factors errs. And I submit most respectfully that that's what happened here. You're making a substantive unreasonableness argument, correct? Yes, I am, Judge. All right. So . . . Let me bring you back . . . Obviously, you've just said it's a very difficult argument to make. Go ahead. Okay. Let me bring you back to a point in time with this case. Right after this egregious homicide, double homicide, the perpetrators were fleeing in a car. Two of them, the one who fired the first shot and the one who fired the shots into the infant, celebrated. Mr. Garcia cried. He cried so much then and later while the crimes were being shown on TV and the other perpetrators were cheering the name of the gang and congratulating themselves on their action. He cried. He cried so much, Judge, that the FBI named him Mr. Weepy. He cried in court. He cried in his probation report. His remorse was beyond anything I've seen. And I'm a cold-blooded defense attorney for forty-five years and a prosecutor before that. Well, it's very clear that the district court was struggling with all this. And this is not a case where the district court was immune to the arguments that you were making. The district court considered it and said that for reasons such as a deterrence, for reasons having to do with the way this crime was committed, your client was not impetuous. This was not an impetuous crime committed just on a lark. This was very much thought out. He brought this circumstance to this gang. He lured this woman and her child. He was involved in the most unspeakable things. He wept. He wept. The district court understood all that. Our task is to try to assess whether what the district court did could not be located within the range of reasonable decisions. That's our task here. And I surely understand it, Judge, but there are occasions when the district court, notwithstanding this high level of difficulty I face, where the district court errs. In the case at Barr, the first shooter was named Zorro. Zorro got his name through skill with edged instruments. Zorro got a sentence of 30 years. To the best of my knowledge, Zorro was not a cooperator. I do not comprehend how it could be that Zorro showed greater remorse or that the public needs a showing of less deterrence for one of these people and not the others. Part of substantive unreasonableness than the comparison to sentences that co-defendants have received? Is that what you're arguing? I think that's a legitimate concern of the court. It's a legitimate concern of Mr. Garcia. It's a legitimate concern of his mother. This is a problem. I don't understand it. I didn't understand it. I'll never understand it. I suggest that the sentence be sent back to the judge for reconsideration. Thank you. May it please the Court. My name is John Durham. I'm an assistant United States attorney in the Eastern District, and I represent the United States along with my colleague, Joanne Navickas. In February of 2010, the appellant and two fellow MS-13 gang members lured a 19-year-old woman and her 2-year-old son into the woods, and they executed them. And this defendant played a key role in those murders. He provided the motive. He lured the victims into the woods. And he fired one of the fatal shots. After that, he fled the United States. He kept the boy with him when he had the opportunity to not go through with it. That's correct, Your Honor. And one of the factors that the district court relied on and the government argued both at sentencing and we argue again today is the fact that the two victims in this case, Vanessa Argueta and Diego Torres, would be alive today were it not for the appellant. He's the one who dated her. He's the one who had a dispute with her. And the key factor here is the fact that he took what could have been a personal dispute and he brought it to the gang. And at that point, despite the fact that he was only 17 years old, he'd been a member of the MS-13 for two years, and he was well aware of the rules of the gang. He not only brought the dispute to the gang, but once he did so, he brought it to his co-defendants, Guzman and Mejia. And the three of them decided that because of her disrespect of him, the appellant, as well as her disrespect of the gang by sending rival gang members to Garcia's house, that she ought to die. What do you do with your adversaries? It seems to be his primary argument that this remorse was beyond any remorse anyone has ever seen and should be factored in such that the sentence should be reduced under substantive reasonableness. The defendant's remorse is certainly a factor that the district court may consider. And in here, the record is abundantly clear that the district court did consider the defendant's remorse and the scope of that remorse. But the court doesn't just consider that in a vacuum. It also must weigh that against all the other 3553A and Miller factors, in particular here, the seriousness of the offense. I think it's also significant in determining how much weight the court gave or should have given to the remorse factor is the fact that this is not a defendant who showed remorse and surrendered to himself right away. He was a fugitive for more than four years. He went to extraordinary lengths to avoid capture. He not only fled from the United States to El Salvador immediately after the murders, but when the FBI went to El Salvador and attempted to locate him in El Salvador, he was tipped off by local law enforcement there, and he again fled. And he remained a fugitive. His location was unknown to law enforcement for many years. And the only point that he was captured was when the FBI put them on their most wanted list. And that generated tremendous media interest. He turned himself in, though. He did, Your Honor. But we would submit, as we argued at sentencing, he turned himself in not out of the goodness of his heart, but out of self-interest and the fact that he was in Nicaragua, he was not a citizen of Nicaragua, there were already rumors floating that bounty hunters were after him, so he made a self-interested decision to surrender himself. And once he did, he did accept responsibility. Obviously, that's undisputed. But that's just one factor for the court to consider against the nature of the crime and also the timing of that acceptance of responsibility. The Supreme Court said in Miller and Montgomery that it should be uncommon to sentence juveniles to life imprisonment and that it should be reserved for the rarest of children. That's correct, Your Honor. But it also set forth a number of factors for courts to consider. And what they mandated, essentially, was that each defendant receive an individualized sentencing process. And that's exactly what the district court did here. It not only considered the 35-53A factors, but it also considered all the factors set forth by the Supreme Court in the Miller decision. In this case, the district court determined and found that Garcia's remorse was genuine, right, and that he was not beyond rehabilitation. The district court did find those things. And that was essentially over the government's objection and over the objection of the probation department. However, I think the objections of the government in probation regarding the degree of the defendant's remorse were certainly things the district court could consider in the weighing of those factors. But again, it's not just that factor. It's not only the remorse. They have to consider the fact, well, this defendant was 17 years old at the time of the murders. He'd been a member of the gang for over two years. And you juxtapose that against the defendants in the Miller case who were 14. Also, the nature and circumstances of the murders in Miller, I submit, were distinguishable from here where you had a premeditated murder that was planned over a period of weeks. I began talking before about the fact that once the plan was hatched between Garcia, Guzman, and Mejia, they went to the clique leader. And it's significant within the MS-13 that they didn't go to just any clique leader. They went to the leader of Garcia's clique. It was his clique leader. They got his permission to carry out the murders. They also used a gun that was owned by that clique. So they went to the clique leader, they got his permission to carry out the murder, and they got permission to use the clique gun. And at that point, Garcia's role continued to be significant. He was the one who borrowed a car. He was the one who went to Hempstead, which if the court is familiar, Hempstead is probably 30, 40 minutes away from the scene of the murders. After picking up the two victims, and it's significant to note, Garcia was by himself at that time. This is not a situation where he had the two other gang members with him and he was under some undue pressure. He was alone in the car. He went to pick up Vanessa Argueta. She made the decision to bring her child with her. And despite the fact that he was in that position, he continued with the plan. There are a number of different things he could have done. He did not. He drove east. He picked up his two co-conspirators. They drove. They had to wait around for almost an hour to pick up the gun. He then drove all of them to this isolated wooded area and lured them into the woods. And, again, his relationship with Vanessa Argueta is extremely important. She was essentially a stranger to both Mejia and Guzman. She wouldn't have entered the woods that night, in the middle of the night, with her child, with complete strangers. She went into the woods because she knew Garcia and she trusted him, and they both paid with their lives because of that. One other point I just would like to correct something my esteemed counsel said on the record. He mentioned Zorro, that's Mejia, was sentenced to 30 years. That's incorrect. He was sentenced to 45 years, and it was after Garcia was sentenced. So the court didn't have that sentence essentially to compare to at the time of Garcia's sentence. However, Guzman had been sentenced, and Guzman, while he did go to trial, so he didn't have the acceptance of responsibility that this defendant did, Guzman was sentenced to life in prison. And he was similarly 17 years old, as was the appellant, and the fact that the court made a specific finding that Guzman never would have even been involved in these murders, were it not for the appellant's decision to bring him in to ask for his assistance and include him in the murder conspiracy. Unless the court has any other questions, we'll rely on our papers for the remaining points. Thank you for your argument. Thank you. Thank you both for your arguments. The court will reserve decision. Have a good Thanksgiving. Court is adjourned.